IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Stafford Kearse, #241166, | ) CIVIL ACTION NO. 9:09-1031-HMH-BM |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) **REPORT AND RECOMMENDATION** |
| | ) |
| Warden Padula and Warden Bell, | ) |
| | ) |
| Defendants. | ) |
| _____ | ) |

This action has been filed by the Plaintiff, pro se, pursuant to 42 U.S.C. § 1983. Plaintiff, an inmate with the South Carolina Department of Corrections, alleges violations of his constitutional rights while he was confined at the Lee Correctional Institution. In addition to the Defendants Padula and Bell, Plaintiff's complaint originally included allegations against several other Defendants. However, by Order of the Court entered September 3, 2009, all Defendants except for the Defendants Padula and Bell were dismissed from this lawsuit, with Plaintiff now proceeding only with his claims against the Defendants Padula and Bell for "failure to protect". See also Court Docket No. 31.

The Defendants Padula and Bell filed a motion for summary judgment pursuant to Rule 56, Fed.R.Civ.P. on August 6, 2009. As the Plaintiff is proceeding pro se, a Roseboro order was entered by the Court on August 11, 2009, advising Plaintiff of the importance of a motion for summary judgment and of the need for him to file an adequate response. Plaintiff was specifically advised that if he failed to respond adequately, the Defendants' motion may be granted, thereby ending his case. Following the grant of an extension of time, Plaintiff filed a memorandum in



opposition to the Defendants' motion on September 30, 2009.

Defendants' motion is now before the Court for disposition.[1]

## Background and Evidence

Plaintiff alleges in his verified amended complaint[2] that the Defendant Padula is the Warden at the Lee Correctional Institution, while the Defendant Bell is the Associate Warden. Plaintiff alleges that LCI is "grossly understaffed", resulting in inmates being exposed to substantial risk of harm, especially in the Chesterfield and Darlington Units, as well as in the east yard. Plaintiff alleges that "rival gangs" are housed in these units, and that "tension is at an all time high all the time". Plaintiff alleges that "inmates who routinely attack other inmates are not isolated or disciplined properly", and that it is not "unusual for riots to break out anywhere on the east yard".

Plaintiff alleges that on January 20 (year not given, but assumed to be 2008) Plaintiff wrote a request to Associate Warden Brooks detailing his concerns about being placed in the Chesterfield Unit upon his release from the maximum security unit. Plaintiff further alleges that he wrote the Defendants Bell and Padula about these same concerns on January 23. Plaintiff alleges that he had recently had a cornea transplant operation, and that he still had stitches in his left eye and poor vision. Plaintiff alleges that a "Dr. Tsai" recommended on March 28 that he be placed in a

---

[1]This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d) and (e), D.S.C. The Defendants have filed a motion for summary judgment. As this is a dispositive motion, this Report and Recommendation is entered for review by the Court.

[2]In this Circuit, verified complaints by pro se prisoners are to be considered as affidavits and may, standing alone, defeat a motion for summary judgment when the allegations contained therein are based on personal knowledge. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991). Plaintiff has filed a verified Complaint. Therefore, the undersigned has considered the factual allegations set forth in the verified Complaint in issuing a recommendation in this case.

2



medical unit because of the delicacy of his eye condition, and that as a result of these concerns, the Defendants "had every reason to place [him] in [the Kershaw Correctional Institution Medical Unit]", but that they failed to do so.

Plaintiff alleges that on April 9, 2008 he was released from disciplinary detention and placed back on the east yard and back in the Chesterfield Unit. Plaintiff alleges that on April 22, 2008, he was stabbed by another inmate. This was apparently the second time Plaintiff had been assaulted by another inmate, as he further alleges in his complaint that he had previously been assaulted on October 17, 2003, while he was an inmate at the Lieber Correctional Institution. Plaintiff alleges that the Defendants were deliberately indifferent to a substantial risk of serious harm to him, and seeks monetary damages.[3] See generally, Verified Amended Complaint.

In support of summary judgment in the case, the Defendant Padula has submitted an affidavit wherein he attests that he is Warden of the Lee Correctional Institution. Padula attests the Plaintiff received a corneal transplant at Palmetto Richland Hospital on November 27, 2007, following which he was returned to LCI with instructions to avoid heavy lifting, stooping or bending, and to call the doctor for increased pain or any other medical concern. Plaintiff was also to have his blood pressure checked every two weeks at the infirmary, avoid eye rubbing, and keep an eye shield in place when sleeping.

Padula attests that these restrictions and limitations did not dictate that Plaintiff be confined to the infirmary, as they could be met anywhere on site in the general population wings. Padula attests that at no time did the Plaintiff inform him or any other prison personnel of any

---

[3]Plaintiff's verified amended complaint contains additional allegations concerning medical care, and names additional Defendants, which, as previously noted, have all previously been dismissed.



specific threat to his person, nor was he or any other prison official aware of any substantial risk of harm to the Plaintiff. As such, Plaintiff presented no reason for special protection or housing placement. With respect to Plaintiff's claim that he sent requests to Padula and Associate Warden Bell prior to his release from the SMU (Special Management Unit) requesting a change of housing assignment, Padula attests that each request for change of assignment is reviewed and a decision is rendered, but that the mere expression of a preference does not qualify a prisoner for a change of housing assignment, nor did Plaintiff in those requests identify a specific threat to himself. <u>See generally</u>, Padula Affidavit.

The Defendants have also submitted copies of Plaintiff's medical records, which note that Plaintiff was born blind in his left eye. These medical records also detail the medical treatment Plaintiff received following an altercation he was involved in on October 17, 2003 while he was housed at the Lieber Correctional Institution, as well as the medical care he received following an altercation on April 24, 2008 while he was housed at the Lee Correctional Institution.

In his unverified response filed in opposition to the Defendants' motion, Plaintiff relates that following his corneal transplant surgery on November 27, 2007, he was placed back in the Chesterfield Unit, where he remained until December 18, 2007, when he was placed in "lock-up" (the special management unit) for smoking marijuana. Plaintiff goes on to state that he then wrote to Padula about being placed in the medical unit at the Kershaw Correctional Unit upon his release, and again states that "Dr. Tsai" recommended on March 28, 2008 that he be placed in a medical unit, but that he was nevertheless released back to the Chesterfield Unit in early April 2008. Plaintiff states that he was then stabbed on April 22, 2008 while he was "going to chow in the east yard", apparently during an altercation between inmates from the Chesterfield Unit and the neighboring



Darlington Unit.

Plaintiff has attached to his response affidavits from three (3) inmates who discuss acts of violence committed by inmates at the Lee Correctional Institution, including the Chesterfield Unit. These incidents occurred during 2005, 2007, and 2008. Plaintiff has also attached copies of requests to staff members and grievances filed by the Plaintiff, the first of which is dated January 2008. Significantly, however, none of these requests and/or grievances contain any claim or argument that Plaintiff was in physical danger from other inmates in the Chesterfield Unit. Rather, they all request that he be sent to the Kershaw Medical Unit because of his medical condition. The first exhibit wherein Plaintiff talks about violence at the Chesterfield Unit is not dated until April 29, 2008, when Plaintiff was in the infirmary at the Kirkland Correctional Institution. In this grievance, Plaintiff complains, <u>inter alia</u>, that he had written to Padula and explained that he did not feel safe going back to a unit as violent as the Chesterfield Unit. <u>See</u> Step One Grievance dated April 29, 2008. Plaintiff has also submitted copies of various medical records.

Finally, Plaintiff has submitted two affidavits, one dated September 3, 2009, and the other dated September 5, 2002 [apparent scrivener's error]. In the first affidavit, Plaintiff attests that he originally wrote to the Defendants on January 20, 2008 asking to be protected from "substantial risk of serious harm". Plaintiff attests that because he has limited vision, he faced a substantial risk by being placed in the Chesterfield Unit. In his second affidavit, Plaintiff attests that he was transferred back to the Lee Correctional Institution on September 9, 2009, and that he had again asked to be placed somewhere else.[4] Plaintiff states that he was "totally ignored", and was "almost"

---

[4]Plaintiff was housed at the Lieber Correctional Institution when he filed this action in April, 2009. He was transferred back to the Lee Correctional Institution on or about September, 2009. <u>See</u> Court Docket No. 51.



assaulted the following day. Plaintiff states that he does not know the people who planned to assault him. See generally, Plaintiff's Affidavits.

## Discussion

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c), Fed.R.Civ.P. The moving party has the burden of proving that judgment on the pleadings is appropriate. Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing there is a genuine issue for trial." Rule 56(e), Fed.R.Civ.P. Further, while the Federal Court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, see Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972), the requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleadings to allege facts which set forth a Federal claim, nor can the Court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Social Services, 901 F.2d 387 (4th Cir. 1990). Here, after careful review and consideration of the evidence submitted, the undersigned finds and concludes that the Defendants are entitled to summary judgment in this case.

First, Plaintiff has no constitutional right to placement in any particular prison, nor does he have any constitutional right to placement in any particular custody classification. See Slezak v. Evatt, 21 F.3d 590 (4th Cir. 1994) [the Constitution vests no liberty interest in inmates retaining or receiving any particular security or custody status as long as the conditions or degree of confinement is within the sentence imposed]; Neal v. Shimoda, 131 F.3d 818, 828 (9th Cir. 1997)



["[A] prisoner does not have a constitutional right to be housed at a particular institution,..., [or] to receive a particular security classification...."]; <u>Neals v. Norwood</u>, 59 F.3d 530, 533 (5th Cir. 1995) ["[A] prison inmate does not have a protectable liberty or property interest in his custodial classification and an inmate's disagreement with a classification is insufficient to establish a constitutional violation."].  Hence, to proceed with this claim, Plaintiff would need to present evidence sufficient to show that, by denying his custody request, a named Defendant displayed a deliberate or callous indifference to a specific known risk of harm to him.  <u>Pruitt v. Moore</u>, No. 02-395, 2003 WL 23851094 at *9 (D.S.C. July 7, 2003) [only deliberate or callous indifference on the part of prison officials to a specific known risk of harm states on Eighth Amendment claim], <u>cert. denied</u>, 2004 WL 232748 (4th Cir. 2004);  <u>Levy v. State of Ill. Dept. of Corrections</u>, No. 96-4705, 1997 WL 112833 (N.D.Ill. March 11, 1997) ["A defendant acts with deliberate indifference only if he or she 'knows of and disregards' an excessive risk to inmate health or safety.'"]; <u>Farmer v. Brennen</u>, 114 S.Ct. 1970, 1979 (1994) [defendants must have engaged in conduct "for the very purpose of causing harm or with the knowledge that harm [would] result".]; <u>see</u> <u>also</u> <u>Pressly v. Hutto</u>, 816 F.2d 977 (4th Cir. 1987).  The undersigned does not find that Plaintiff has presented sufficient evidence to create a genuine issue of fact as to whether the Defendants, or any other prison official, were deliberately indifferent to a specific known risk of harm to him.

Considered in the light most favorable to the Plaintiff, the evidence before the Court shows that Plaintiff has a vision problem which has existed since birth.  Plaintiff had corneal transplant surgery in November 2007, following which he was released back into the general population at the Lee Correctional Institution.  He was subsequently transferred to the SMU for a disciplinary violation (smoking marijuana) in December 2007, following which he made several

7



requests to be placed in the medical unit at the Kershaw Correctional Institution upon his release from the SMU. While Plaintiff states in his verified complaint that he told the Defendants as early as January 2008 that he wanted this transfer because he was concerned about his safety in the Chesterfield Unit, Plaintiff's own exhibits attached to his response to the motion for summary judgment reflect that his repeated requests for this transfer, beginning in January all the way through April, were premised on his alleged medical needs and desire to be placed in that medical unit, not on any perceived threat to him from other inmates. <u>See</u>, <u>specifically</u>, Plaintiff's Exhibits [Hand written requests to staff] dated January 20, 2008 (one to Warden Brooks; the other to Warden Bell).

Further, even assuming for purposes of summary judgment that Plaintiff did tell the Defendants he wanted this transfer because he was concerned about the level of violence in the Chesterfield Unit and did not want to go back there, such a general and conclusory request did not entitle him to the relief he sought. Unfortunately, it is a fact of life that prisons can be violent and dangerous places. However, Plaintiff has presented no evidence to show that the Chesterfield Unit was anymore so than a typical prison, even accepting for purposes of summary judgment Plaintiff's evidence (prisoner affidavits) showing that acts of violence had occurred there in the past. Indeed, Plaintiff's own previous assault in 2003 occurred, not at the Lee Correctional Institution, but at an entirely different prison. Plaintiff has presented no evidence to show that he was ever in danger from any particular inmates who had a specific grudge or vendetta against him, and Plaintiff concedes in his response to the Defendants' motion that he did not tell either Defendant of any such specific threat to his well being. <u>See</u> <u>Robinson v. Cavanaugh</u>, 20 F.3d 892, 895 (8th Cir. 1994) (per curiam)[finding that prison officials were not deliberately indifferent to inmate's safety where they refused to place him in protective custody based solely on a general fear for his safety]; <u>Miller v.</u>



<u>Turner</u>, 26 Fed.Appx. 560, 563 (7th Cir. Dec. 18, 2001)["The Plaintiff must . . . prove that prison officials were aware of a specific, impending, and substantial threat to his safety, often by showing that the Plaintiff complained to prison officials about a *specific* threat to his safety."](emphasis in original). Rather, he argues that because of his generally poor vision, he should not have been kept in the general population with other inmates.

Such a general and conclusory request without any evidence that Plaintiff was subject to a specific threat does not create a genuine issue of fact that prison officials committed a constitutional violation when they determined it was safe for Plaintiff to go back into the general population. In order to show deliberate indifference, Plaintiff must present evidence to show that "the officials act[ed] with a sufficiently culpable state of mind." <u>Strickler v. Waters</u>, 989 F.2d 1375, 1382-1383 (4th Cir. 1993), <u>cert. denied</u>, 510 U.S. 949 (1993), quoting <u>Wilson v. Seiter</u>, 501 U.S. 294, 298 (1991); <u>Bagola v. Kindt</u>, 131 F.3d 632, 646 (7th Cir. 1997) ["Although prison officials need not intend that a known risk will actually harm an inmate, they must intentionally ignore this known risk in order to be liable under the Eighth Amendment."]. <u>See also</u> <u>Shakka v. Smith</u>, 71 F.3d 162, 166 (4th Cir. 1995) [in order to state a constitutional violation, the deprivation alleged must not only be "objectively significantly serious", but the Defendant must also have acted with a "sufficiently culpable state of mind"]. Plaintiff has presented no evidence to show that returning him back to the general population at LCI after completion of his SMU disciplinary stay was an act so unreasonable as to constitute deliberate indifference to a known risk of harm by either Defendant, and Plaintiff's claim that the Defendants' actions violated his constitutional rights is therefore without merit. <u>Robinson</u>, 20 F.3d at 895; <u>Miller</u>, 26 Fed.Appx. At 563 ["[A] 'mere possibility of violence' or the occurrence of a random act of violence is not sufficient to impose liability on prison



officials"].

Plaintiff is not without a remedy if he believes the actions of prison officials were unjustified or even negligent, as he may have a claim under state tort law or some administrative remedy he may pursue. However, the sole question before this Court is whether Plaintiff has submitted sufficient evidence to maintain a *constitutional* claim, not whether he may have a claim under some state law or administrative procedure. See DeShaney v. Winnebago County Dep't of Social Servs., 489 U.S. 189, 200-203 (1989) [§ 1983 does not impose liability for violations of duties of care arising under state law]; Baker v. McClellan, 443 U.S. 137, 146 (1976) [§ 1983 claim does not lie for violation of state law duty of care]. He has failed to submit evidence to meet this standard. Paul v. Davis, 424 U.S. 693, 701 (1976) [not every claim which may set forth a cause of action under a state tort law is sufficient to set forth a claim for a violation of a constitutional right]. Therefore, the Defendants are entitled to summary judgment.

## Conclusion

Based on the foregoing, it is recommended that the Defendants' motion for summary judgment be **granted**, and that this case be **dismissed**.

The parties are referred to the Notice Page attached hereto.

_____
Bristow Marchant
United States Magistrate Judge

October 13, 2009

Charleston, South Carolina



**Notice of Right to File Objections to Report and Recommendation**

     The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

     Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 2940

     **Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).

